UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GEMMA MOORMAN and <br> JEFFREY MOORMAN, <br>     *Plaintiffs*, <br> <br>     v. <br> <br> JAMES BREMM and JASON <br> KONSCHNIK, <br>     *Defendants*. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | <br> <br> <br> <br> Civil No. 3:21-CV-1300(OAW) |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

Gemma and Jeffrey Moorman ("Mrs. Moorman," "Mr. Moorman" and collectively "the Moormans" or "Plaintiffs") bring this action against James Bremm ("Mr. Bremm") and Jason Konschnik ("Mr. Konschnik") (collectively "Defendants"), alleging that Defendants are liable for fraud, breach of contract, and fraudulent concealment, arising from misrepresentations concerning property located at 896 Cedar Road in Southport, Connecticut ("the Property"). Plaintiffs additionally assert claims for defamation and abuse of process against Defendants' counsel. Plaintiffs invoke this court's jurisdiction pursuant to 28 U.S.C. § 1332.[1] Defendants have filed a Motion to Dismiss Plaintiffs' claims (ECF No. 28). Plaintiffs have filed a Motion to Join Additional Party (ECF No. 59) and the parties have filed several discovery-related motions.

For the reasons stated herein, the court **GRANTS** Defendants' motion, **DENIES** Plaintiffs' motion, and finds the remaining motions **MOOT.**

---

[1] 28 United States Code section 1332 provides, in relevant part, as follows: "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-(1) citizens of different States . . . ." 28 U.S.C. § 1332(a).

1

**I.     BACKGROUND**

    a)     <u>Factual Allegations</u>

In 2017, Defendants purchased the Property from Nils and Joan Sterner ("the Sterners") and "undertook a complete renovation." Second Amended Complaint ("SAC"), ECF No. 25 at 3 ¶ 1. The Sterners made Defendants aware of drainage problems on the Property and provided Defendants with documents in support of their mitigation efforts with respect to those issues. *Id.* at ¶ 2.

On September 25, 2018, six to eight inches of rain fell in the vicinity of the Property. *Id.* at ¶ 4. A parcel known as Hull's Farm Estate ("Hull's Farm") abuts the north and west portions of, and is at a "considerably higher" elevation than, the Property. *Id.* at ¶ 5. On that date, runoff from Hull's Farm "washed grass, soil, fertilizer and other organic debris," onto the Property, causing contamination of the in-ground swimming pool thereon. *Id.* at ¶ 6. Defendants hired Marquee Pools and Service ("Marquee") to clean the pool. *Id.* at ¶ 7. Marquee performed service on three occasions, in order to complete the cleaning. *Id.* at ¶¶ 8-10. Marquee's invoices marked "PAID" were billed to Defendants. *Id.* at 11. While Defendants resided at the Property, rain runoff from an abutting property washed organic debris into the in-ground pool, caused the Property's sump pumps to activate. *Id.* at 2. Defendants "could see water flowing from the sump pumps and pooling in the cul de sac." *Id.* Defendants "engaged Marquee Pools and Service to clean the pool in three separate service visits over the course of one week." *Id.*

Defendants resided at the Property, *id.* at ¶ 3, until, in the latter part of 2018, or early 2019, they made a decision to sell it. *Id.* at 13.

On February 6, 2019, Defendants executed a "Residential Property Condition Disclosure Report" ("Disclosure Report"), in compliance with Conn. Gen. Stat. [§] 20-237b. *Id.* at ¶¶ 14–15. In the Disclosure Report, Defendants answered "no" to a question regarding the existence of "water drainage problems" on the Property. *Id.* at ¶ 16. The Disclosure Report "was incorporated into the Fairfield County Bar Association Residential Real Estate Sales Agreement ("Agreement") for the sale of the Subject Property by the Defendants to the Plaintiff[, Mrs. Moorman,] as a rider." *Id.* ¶ 17.[2]

On June 2, 2019, Defendants signed the Agreement regarding the sale of the Property to Mrs. Moorman. *Id.* at ¶ 18. During a "walk through" of the Property, Bremm denied that the sump pumps had ever been triggered, in response to Mr. Moorman's inquiry. *Id.* at ¶ 19. Defendants failed to give Plaintiffs the Disclosure Report and, instead, left it and other documents in a kitchen cabinet. *Id.* at ¶ 22. The additional documents included an April 2015 contract for waterproofing services between Quality Dry Basements ("Quality") and the Sterners. *Id.* at ¶ 23.

Despite the Agreement's stated requirements regarding misrepresentations and notice, *id.* at ¶¶ 24-26, no notice was sent to Plaintiffs with respect to water drainage problems. *Id.* at ¶ 27. In reliance on the Disclosure Report and lack of other notice, Plaintiffs decided to purchase the Property. *Id.* at ¶¶ 28.

---

[2] Although the SAC states that the Agreement was between Plaintiffs and Defendants, the Agreement, which is attached to Plaintiffs' Opposition, ECF No. 32, lists as signatories only Defendants and Mrs. Moorman. ECF No. 32, Pl. Ex. B at 19. As stated infra, on a motion brought pursuant to Rule 12(b)(1), asserting a fact-based challenge to the existence of subject matter jurisdiction, the parties may submit, and the court may consider, evidence outside of the allegations stated in the complaint. *See infra* at 7 (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016)).

3

On August 1, 2019, Defendants conveyed title to the property to Gemma M. Moorman, Trustee of the Thorin Revocable Living Trust ("the Trust"). Warranty Deed, ECF No. 28-1, Def. Ex. A at 10.[3]

On July 9, 2021, four inches of rain fell in the area of the Property and resulted in runoff effecting the Property's pool, for which Plaintiff's engaged MJ Pools. *Id.* at ¶¶ 30-31.

From September 1 through September 2, 2021, a hurricane in the area of the Property deposited six inches of rain, resulting in the aforementioned runoff into the pool and, additionally, causing the grout in the pool apron to erode. *Id.* at ¶ 32. In early October, Plaintiffs hired Rizzo Pool and Masonry ("Rizzo") to remedy the damage. *Id.* at ¶ 33.

Upon their investigation, Plaintiffs discovered, through the statements of two neighbors, *id.* at ¶ 35, and Marquee, *id.* at ¶¶ 36-37, the 2018 remediation for runoff issues on the Property.

The Second Amended Complaint states that Defendants knew or should have known that drainage problems did exist on the Property. *Id.* at 2. In particular, "when there is heavy rainfall . . . runoff from an abutting property would wash soil, grass, fertilizer and other organic debris into the in-ground swimming pool on the Subject Property and

---

[3] Despite the statement in the SAC that Plaintiffs purchased the property, the Parties' 26f Report, states as an undisputed fact that "[o]n August 1, 2019, the *Plaintiffs* conveyed title to 896 Cedar Road, Southport, CT 06890 to Gemma M. Moorman, Trustee of the Thorin Revocable Living Trust." ECF No. 20 at 3 (emphasis added). It is unclear whether this "undisputed fact" erroneously listed "Plaintiffs," rather than "Defendants," or whether at some point immediately after an initial transfer of the Property, Plaintiffs then conveyed it to the Trust. Regardless, the Warranty Deed, ECF No. 28-1, Def. Ex. A at 10, lists as signatories both Defendants and Mrs. Moorman, in her capacity as Trustee of the Thorin Revocable Living Trust. Therefore, the Warranty Deed, and associated Title Examination, which also is attached to Defendants' Motion, establish that the Trust owned the property on August 1, 2019, through at least December 21, 2021. Title Examination Report and Warranty Deed, ECF No. 28-1 at 4, 10.

contaminate it." *Id.* In addition, the runoff would "inundate the foundation of the house and eventually weaken it and trigger the sump pumps that would evacuate water," resulting in damage to the Property's driveway, a neighbor's property and pavement on the adjacent cul-de-sac. *Id.* Plaintiffs state that they "are now saddled with mitigation costs and the obligation to disclose this history to any prospective buyer," diminishing the Property's value. *Id.*

In a November 19, 2021 response to Plaintiff's Motion to Compel, Defendants' counsel made a statement regarding Mr. Moorman that counsel had, from prior interactions, "found him to lack candor and frequently made untrue statements of fact both in his writings and in court." *Id.* at 8-9 ¶ 65. This statement provides the basis for Plaintiffs' claims for abuse of process and defamation, in Counts Four and Five. *Id.* at 8-9.

    b)    <u>Procedural Facts</u>

On September 30, 2021, Plaintiffs filed the original complaint in this case. ECF No. 1. On October 8, 2021, the court concluded that Plaintiffs failed to state a sufficient basis for the court's diversity jurisdiction, based on uncertainty surrounding the citizenship of Defendant, Wyndam LLC. ECF No. 9. The court directed Plaintiffs to file an amended complaint to remedy this issue, on or before October 22, 2021. On October 19, 2021, Plaintiffs filed a notice of withdrawal of their claims against Wyndam LLC, and subsequently filed an Amended Complaint. ECF Nos. 11 and 17. On December 16, 2021, the court granted Plaintiffs leave to file a Second Amended Complaint, ECF No. 23, and Plaintiffs filed their amendment on December 29, 2021. ECF No. 25.

On January 5, 2022, Defendants filed the within Motion to Dismiss. ECF No. 28.

Plaintiffs filed subsequent motions to amend the SAC, ECF Nos. 29 and 33, however, the court denied leave based on Plaintiffs' failure to provide sufficient cause for further amendment to the pleadings. ECF No. 63.

On January 25, 2022, Plaintiffs filed a motion to disqualify Defendants' counsel. ECF No. 30. The court subsequently denied the motion. ECF No. 64 at 2 (finding no present conflict that would overcome Defendants' ability to choose their own counsel, and, even in the face of a conflict, defense counsel represents that his clients would be willing to execute a waiver of the same.).[4]

In response to Defendants' arguments with respect to standing, on July 25, 2022, Plaintiffs filed a Motion to Join an Additional Party. ECF No. 59.[5]

## II. STANDARD

The existence of subject matter jurisdiction is a threshold determination and dismissal under Rule 12(b)(1) is proper "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). A defendant may move to dismiss pursuant to Rule 12(b)(1), due to a plaintiff's lack of constitutional standing. Fed. R. Civ. P. 12(b)(1); *W.R. Huff Asset Mgmt. Co., LLC v. DeLoitte & Touche LLP*, 549 F.3d 100, 104 (2008). Once subject matter jurisdiction is

---

[4] The court further denied Plaintiffs' related Motion for Sanctions (ECF No. 44). *See* Order Denying Sanctions, ECF No. 66 at 4.

[5] In the meantime, the parties filed additional motions related to discovery. *See* Defendants' Motion to Quash, ECF No. 47; Defendants' Motion to Stay Discovery, ECF No. 51; Plaintiffs' Motions to Compel, ECF Nos. 54 and 56. Because the court grants Defendants' Motion to Dismiss, these discovery motions are moot.

challenged, "a plaintiff . . . has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.

"A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "When the Rule 12(b)(1) motion is facial, *i.e.,* based solely on the allegations of the complaint or the complaint and exhibits attached to it . . . the plaintiff has no evidentiary burden." *Id.* However, a defendant asserting a fact-based challenge does so by "proffering evidence beyond the Pleading." *Id.* at 57. Under those circumstances, the plaintiffs must "come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (citing *Exchange National Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1131 (2d Cir. 1976)).

To avoid dismissal under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and not merely "conceivable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 684, (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

7

**III.     DISCUSSION**

        a)     <u>Motion to Join Additional Party</u>

In response to Defendants' arguments regarding Plaintiffs' standing to bring the claims in this case, Plaintiffs filed a motion to join the Trust as a Plaintiff.  ECF No. 59.  However, Plaintiffs do so without legal representation, as they appear pro se in this matter.

The Second Circuit has recognized "that a corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se*."  *Jones v. Niagara Frontier Transp. Authority,* 722 F.2d 20, 21 (2d Cir. 1983).  Similarly, courts have recognized that a trust, which is also such an artificial entity, must be represented by an attorney.  *Platt v. Michaan*, 2021 WL 1573951, at *1 (S.D.N.Y. Apr. 22, 2021) (holding that a trustee may not appear pro se on behalf of a trust, and finding instructive a Second Circuit decision concluding "that an 'administratrix or executrix of an estate may not proceed *pro se* when the estate has beneficiaries or creditors other than the litigant . . . .'") (quoting *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997)); *Bell v. S. Bay European Corp.*, 486 F. Supp. 2d 257, 259 (S.D.N.Y. 2007) (stating that "[a] trust is deemed an artificial entity for the purposes of the rule barring a nonlawyer trustee from representing the interests of the trust").[6]  The court in *Pridgen* recognized that "'appearance *pro se* denotes . . . appearance for one's self; so that a person ordinarily may not appear *pro se* in the cause of another person or entity."  *Pridgen*, 113 F.3d at 393.

---

[6] Consistent with that premise, in Connecticut,"[a]ny person who is not an attorney is prohibited from practicing law, except that any person may practice law, or plead in any court of this state in his own cause. General Statutes § 51-88 (d) (2)." *Cook v. Purtill*, 195 Conn. App. 828, 830–31 (2020).

8

As Plaintiffs purport to represent the Trust in the within motion, which they may not do, the motion is **DENIED.**

      b)      <u>Standing re: Fraud, Breach of Contract & Fraudulent Conveyance</u>

Under Article III of the Constitution, the jurisdiction of federal courts is limited to "cases" and "controversies." U.S. Const. art. § 2. "That restriction requires that the party invoking federal jurisdiction have standing—the personal interest that must exist at the commencement of the litigation." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008) (quoting *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 189 (2000) (internal quotation marks omitted). "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (citing *Raines v. Byrd,* 521 U.S. 811, 818 (1997)). "Article III standing consists of three 'irreducible' elements: (1) *injury-in-fact,* which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) *causation* in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability,* or a non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff Asset Mgmt. Co*, 549 F.3d at 106–07 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)) (emphasis in original). "Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element of [Article III standing]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal citation and quotation omitted). The party invoking federal jurisdiction bears the burden of establishing [these] elements." *Lujan*, 504 U.S at 560.

9

Defendants state that on August 1, 2019,[7] they conveyed title to the Property to Gemma M. Moorman, Trustee of the Thorin Revocable Living Trust ("the Trust").  ECF No. 28-2 at 4.  According to Defendants, because Plaintiffs "cannot demonstrate a specific, personal and legal interest in the litigation," nor "that their alleged personal and legal interest has been specially and injuriously affected by the defendants' alleged actions," Plaintiffs lack standing to pursue this action.  *Id.* at 7.

In response to Defendants' motion,[8] Plaintiffs argue that their claims are "predicated on enforceable contract obligations," rather than "ownership interest" in the subject property.  ECF No. 32 at 1.  Plaintiffs rely on the Agreement, signed on May 28, 2019, by Mrs. Moorman, and on June 2, 2019, by Defendants, and the Disclosure Report.  *Id.* at 5, 8-9; Agreement, ECF No. 32, Pl. Ex. B at 18, 33; Disclosure Report, ECF No. 32, Pl. Ex. A at 17.  Plaintiffs note that the Trust was not a party to the Agreement, and the relief they seek is based on Defendants' "intentional" failure to disclose information, not Plaintiffs' ownership of the property.  ECF No. 32 at 9-10.  Finally, Plaintiffs state that, even if their ownership of the Property is required for standing, on December 31, 2021, the Trust conveyed title to Plaintiffs by quit claim deed.  *Id.* at 11; Quit Claim Deed, ECF No. 32, Pl. Ex. D. at 40.

---

[7] Defendants state in their memorandum that the conveyance took place on August 1, 2018, an apparent scrivener's error, as the deed submitted with Attorney Andrew Sherriff's Affidavit indicates the transaction occurred on August 1, 2019.  Affidavit of Andrew R. Sherriff, ECF No. 28-1, Warranty Deed, Def. Ex. A at 10.

[8] Plaintiffs initially argue that Defendants' motion fails to satisfy this court's Local Rules regarding the Rule 12(a) Notice to Self-Represented Litigants.  ECF No. 32 at 1.  Although the court is "mindful of its obligation to construe pro se filings 'liberally, applying less stringent standards than when a plaintiff is represented by counsel,'" *Telkamp v. Vitas Healthcare Corp. Atl.*, 2016 WL 7428189, at *2 (D. Conn. Dec. 23, 2016) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (per curiam)), Defendants' failure to send Plaintiffs the requisite Local Rule 21(a) Notice amounts to harmless error.  *See Torres v. Gaines*, 130 F. Supp. 3d 630, 634 (D. Conn. 2015) (noting that "[t]he purpose of the local rule is to provide notice, and Plaintiffs must have had actual notice if they are able to quote the applicable rule.").

Defendants reply that, even assuming the SAC seeks relief based on breach of the Agreement and misrepresentations in the Disclosure Report, and not ownership of the property, Mr. Moorman was not a signatory on those agreements and, therefore, fails to state a basis for his standing. ECF No. 34 at 3. With respect to Mrs. Moorman, Defendants argue that she fails to sufficiently allege that she suffered damages, as she assigned any and all rights to the Trust. *Id.* at 8-9.

As noted, the Trust conveyed the property to Plaintiffs via a Quit Claim Deed, dated December 31, 2021. ECF No. 32, Pl. Ex. D at 40. However, even assuming that the deed sufficiently conveyed ownership to Plaintiffs, it is dated two days after the SAC and more than a year after Plaintiffs' original Complaint in this case. *Id.* As standing must exist "at the commencement of the litigation," *Davis*, 554 U.S. 732 (quoting *Friends of Earth, Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks omitted)), the Quit Claim Deed does not sufficiently establish Plaintiffs' ownership at the time they commenced this case.

Despite Plaintiffs' argument that their claims are based on "intentional conduct" and not "ownership" rights, they have failed to articulate sufficient harm to their "legally protected interest," *Lujan*, 504 U.S. at 560, in order to support their constitutional standing and this court's subject matter jurisdiction.[9] All of the alleged damages from Plaintiffs' claims in Counts One through Three arise from damage to the Property. It is undisputed that On August 1, 2019, the Trust, not Plaintiffs, owned the Property and continued to do

---

[9] The court notes that Mr. Moorman is not listed as a party to the Agreement. ECF No. 32, Pl. Ex. B at 19. In Connecticut, "[t]he elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., 311 Conn. 282, 291, 87 A.3d 534, 540 (2014). As he was not a party to the agreement, Mr. Moorman's claim for breach of contract fails for this additional reason.

so through, and after, the date of the original September 30, 2021 Complaint, and the SAC. *See* Title Report and Warranty Deed, ECF No. 28-1 at 4–5, 10. In the Warranty Deed, Defendants conveyed the Property to the Trust, without reserving any rights relevant to the basis for claims in this case.

"It is a well established principle that '[a]n instrument conveying an interest in land conveys only that which is specifically expressed in the document.'" *Powers v. Olson*, 252 Conn. 98, 106 (2000) (quoting *Alemany v. Commissioner of Transportation,* 215 Conn. 437, 442 (1990); *Connecticut Light & Power Co. v. Holson Co.,* 185 Conn. 436, 441 (1981)). In addition, "it is axiomatic that a deed supersedes the underlying contract." *Id.* (citing *Mongillo v. Commissioner of Transportation,* 214 Conn. 225, 231 (1990) ("under the principle of merger by deed, the terms of the deed would automatically replace and supersede the terms of the underlying contract, absent a reservation of collateral rights"); *Knight v. Breckheimer,* 3 Conn. App. 487, 490 (1985) ("the general rule is that acceptance of a deed in pursuance of articles of agreement for the conveyance of land is prima facie the completion of the contract; and all stipulations contained therein . . . are merged in the deed although omitted therefrom" [internal quotation marks omitted])).

Any rights Plaintiffs may have had with respect to the Agreement, and the related Disclosure Report, passed to the Trust when it took ownership of the property, prior to the commencement of this case. Plaintiffs have failed to provide evidence that they reserved any rights when the Property was conveyed to the Trust, on August 1, 2019. The Trust, not Plaintiffs, suffered any damage resulting from Defendants' alleged misrepresentations and omissions. Consequently, Plaintiffs fail to state the requisite "'injury in fact . . . to a 'legally protected interest,'" *W.R. Huff*, 549 F.3d at 106 (quoting *Lujan,* 504 U.S. at 560–

61), sufficient to support their standing to bring the claims contained in Counts One through Three.

  c) <u>Remaining Claims Based on Statement of Defendants' Counsel</u>

    i. *Litigation Privilege*

Defendants argue that their attorney's statement regarding his refusal to communicate with Mr. Moorman verbally, and only in writing, is protected by the litigation privilege and, because of that privilege, the court lacks jurisdiction over the claims based on his statements. Plaintiffs argue in opposition that the privilege does not apply to their claims for abuse of process and defamation.

Initially, the court notes that "[f]ederal courts in Connecticut routinely apply the state's litigation privilege to claims that challenge representations made in underlying state court litigation." *Weldon v. MTAG Servs., LLC*, 2017 WL 776648, at *10 (D. Conn. Feb. 28, 2017) (collecting cases). In this case, however, Plaintiffs' defamation and abuse of process claims rely on counsel's statements made during the course of the within federal court proceedings. Even in this context, however, courts have recognized a federal common law litigation privilege, based on applicable precepts of state privilege law. *NSB Techs., Inc. v. Specialty Direct Mktg., Inc.*, 2004 WL 1918708, at *3 (N.D. Ill. Aug. 20, 2004); *see also United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 2021 WL 1956369, at *4 (S.D.N.Y. May 17, 2021), *report and recommendation adopted*, 2021 WL 3082209 (S.D.N.Y. July 21, 2021) (recognizing that "a federal court hearing a defamation action would apply an applicable state law litigation privilege to statements even if the statements were made during the course of federal court proceedings"). In *NSB Techs.*, the court found noteworthy the fact that "all fifty states recognize some form

of the litigation privilege." *Id.* (citing T. Leigh Anenson, *Absolute Immunity From Civil Liability: Lessons For Litigation Lawyers,* 31 Pepp. L. Rev. 915, 927 (May 2004); *Jaffe v. Redmond,* 518 U.S. 1, 13 (1996) ("the existence of a consensus among the States indicates that 'reason and experience' support recognition of the privilege.")). The court concludes that application of the litigation privilege also is appropriate here.

In Connecticut, "the litigation privilege is broad: it provides protection even for allegedly fraudulent statements made in the course of litigation." *Weldon*, 2017 WL 776648, at *10 (citing *Simms v. Seaman*, 308 Conn. 523, 548–549 (2013); *Tyler v. Tatoian*, 164 Conn. App. 82, 92–93 (2016)). The privilege applies to "'communications uttered or published in the course of judicial proceedings . . . so long as they are in some way pertinent to the subject of the controversy.'" *Id.* (quoting *Dina v. Cuda & Assocs.*, 950 F. Supp. 2d 396, 407 (D. Conn. 2013) (quoting *Derisme v. Hunt Leibert Jacobson PC*, 880 F. Supp. 2d 311, 337 (D. Conn. 2012))). Statements warranting protection include those made in "'pleadings or other documents prepared in connection with a court proceeding,'" *id.* (quoting Derisme, 880 F. Supp. 2d at 337), and also "'preparatory communications that may be directed to the goal of the proceeding.'" *Id.* (quoting *Hopkins v. O'Connor*, 282 Conn. 821, 832 (2007)). With respect to defamation claims, "[t]he Connecticut Supreme Court has 'consistently . . . held that absolute immunity bars defamation claims that arise from statements made in the course of judicial or quasi-judicial hearings.'" *Khan v. Yale Univ.*, 511 F. Supp. 3d 213, 219–20 (D. Conn. 2021) (quoting *Rioux v. Barry*, 283 Conn. 338, 344 (2007)).

The court concludes that with respect to the defamation claim, the litigation privilege applies to counsel's statement. It was made in a response memorandum, in

14

order to explain his interest in communicating only through recordable means, and in an effort to provide meaningful and effective representation to his clients. Therefore, Defendants' Motion to Dismiss, ECF No. 28, is **GRANTED** as to the defamation claim.

With respect to certain torts, including abuse of process, however, the Connecticut Supreme Court has recognized that the litigation privilege does not apply. *Simms v. Seaman*, 308 Conn. 523, 547 (2013). This is because such claims "are grounded in 'conduct that subverts the underlying purpose of the judicial process . . . [and] prevent, or hold an individual liable for, the improper use of the judicial process for an illegitimate purpose, namely, to inflict injury upon another individual in the form of unfounded actions.'" *Weldon*, 2017 WL 776648, at *10 (quoting *MacDermid, Inc. v. Leonetti*, 310 Conn. 616, 631 (2013) (citing *DeLaurentis v. City of New Haven*, 220 Conn. 225, 264 (1991)). Therefore, the litigation privilege does not apply to the claim premised on an alleged abuse of process.

ii)   *Abuse of Process*

To state an abuse of process claim, Plaintiff must "show: '(1) the defendant instituted proceedings or process[10] against the plaintiff and (2) the defendant used the proceedings primarily to obtain a wrongful purpose for which the proceedings were not designed.'" *Boyd v. City of Hartford*, 2022 WL 3646168, at *7 (D. Conn. Aug. 24, 2022) (quoting 1 D. Pope, Connecticut Actions and Remedies, Tort Law (1993) § 8:02); *Pursuit Opportunity Fund I Master Ltd. v. Claridge Assocs., LLC*, 467 F. Supp. 3d 32, 35 (D.

---

[10] As opposed to the tort of vexatious litigation, which focuses on a litigant's motive in bringing a lawsuit, "[a]buse of process, in contrast, can occur at anytime, including during the pendency of the litigation, and is unrelated to the intent behind the lawsuit; rather, the allegation of abuse focuses on the actual application of a particular legal process, and whether it has been applied for an end outside the scope of purpose for which the process was designed." Equal., Inc. v. I-Link Commc'ns, 76 F. Supp. 2d 227, 230 (D. Conn. 1999).

Conn. 2020) (quoting *Larobina v. McDonald*, 274 Conn. 394, 403 (2005).[11] "Liability will not be found when the process is used for the purpose for which it is intended, even in the presence of an 'incidental motive of spite or an ulterior purpose of benefit to the defendant.'" *Boyd*, 2022 WL 3646168, at *7 (citing *Suffield Development Associates Ltd. P'ship v. Nat'l Loan Investors, L.P.,* 260 Conn. 766, 772–73 (2002)). Mr. Moorman failed to cite a sufficient legal process to which he has been subjected due to counsel's preferred method of communication. Other than some unquantifiable level of inconvenience in transacting via methods other than oral communication, Mr. Moorman's allegations fail to state a process or proceeding against him sufficient to support this claim. Therefore, Defendants' motion to dismiss this claim is **GRANTED.**

### III.   CONCLUSION

Accordingly, Defendants' Motion to Dismiss (ECF No. 28), hereby is **GRANTED** and the complaint is **DISMISSED.** The dismissal is without prejudice with respect to Counts One through Three, and with prejudice with respect to Counts Four and Five. Additionally, the pending Motion to Join Additional Party (ECF No. 59) is **DENIED** and the Motions to Quash (ECF No. 47), to Stay Discovery (ECF No. 51), and to Compel (ECF Nos. 54 and 56), are **MOOT.**

**IT IS SO ORDERED.** Entered at Hartford, Connecticut, this 5th day of October, 2022.

___/s/___
Omar A. Williams
United States District Judge

---

[11] The court notes that this claim is properly analyzed pursuant to Federal Rule 12(b)(6), rather than Rule 12(b)(1). *Id.* at 35-36.